UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AARON COHEN,

                Plaintiff,

-against-

DITECH FINANCIAL LLC f/k/a GREEN TREE
SERVICING, LLC, and SAFEGUARD PROPERTIES
LLC,

                Defendants.

No. 15-cv-7124 (NSR)
OPINION & ORDER

---

NELSON S. ROMÁN, United States District Judge

Plaintiff Aaron Cohen initiated this action against Defendant Ditech Financial LLC,

formerly known as Green Tree ("Green Tree" or "Ditech"), and Defendant Safeguard Properties

LLC ("Safeguard" or "Defendant"), alleging violations of the Fair Debt Collection Practices Act,

15 U.S.C. § 1692, *et seq.* ("FDCPA"). Before the Court is Safeguard's motion to dismiss the

amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated

below, Safeguard's motion is DENIED.

## BACKGROUND

The following facts are derived from the Amended Complaint unless otherwise noted,

and are accepted as true for purposes of this motion.

Plaintiff has a residential mortgage loan on his home serviced by Ditech. (*See* Amended

Complaint, ¶ 14, ECF No. 17, [hereinafter ("Am. Compl.")].) In March 2015, doing business as

Green Tree, Ditech commenced a foreclosure filing, claiming that Plaintiff's loan had been in

default since 2010. (*Id.* ¶ 15.) Shortly before August 12, 2015, Ditech retained Safeguard to assist

in the attempted collection of Plaintiff's mortgage debt by delivering written communication to

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/3/2017

Plaintiff.  (*Id*. ¶ 16.)  Safeguard then left a door hanger on Plaintiff's door, which advised Plaintiff to call Green Tree Mortgage at a specific number, to be prepared to give his account number, and warned Plaintiff: "we are expecting your call today."  (*Id*. ¶ 17.)

The purpose of the communication delivered by Safeguard was to "assist and facilitate Ditech's attempted collection of … a mortgage loan for Plaintiff's home."  (*Id*. ¶ 19.)  At the time that Safeguard delivered the collection communication to Plaintiff, Ditech, who had already instituted foreclosure proceedings against Plaintiff, knew that Plaintiff was represented by counsel with regard to the mortgage, and initiated direct contact with Plaintiff nonetheless.  (*Id*. ¶ 21.)

The collection communication delivered to Plaintiff by Safeguard, on behalf of Ditech, did not disclose that the communication was from a debt collector.  (*Id*. ¶ 22.)  Plaintiff was "intimidated, annoyed and aggravated by the trespassory visits to his home" by Safeguard, who at no time provided the disclosures required by 15 U.S.C. §§ 1692g or 1692e(11).  (*Id*. ¶ 23.)  Plaintiff alleges that Safeguard has a policy and practice of not furnishing consumers with the disclosures required by 15 U.S.C. §§ 1692g or 1692e(11), or having their representatives identify themselves as representative of Safeguard when delivering collection communications.  (*Id*.)  Though the communication was from Safeguard, it only bears the name of "Green Tree Mortgage," and in fact, Plaintiff only learned of Safeguard's identity through discovery, and subsequently added Safeguard to this action in the Amended Complaint.  (*Id*.; *compare* ECF. No. 17, *with* ECF No. 1.) Plaintiff brings this action on his own behalf and on behalf of a class.  (*Id*. ¶ 24.)

## STANDARD ON A MOTION TO DISMISS

Under Rule 12(b)(6), the inquiry is whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord*

*Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. at 679. To survive a motion to dismiss, a complaint must supply "factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd*., 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). The Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but the Court is "'not bound to accept as true a legal conclusion couched as a factual allegation,'" or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). In determining whether a complaint states a plausible claim for relief, a district court must consider the context and "draw on its judicial experience and common sense." *Id*. at 662. A claim is facially plausible when the factual content pleaded allows a court "to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678.

## DISCUSSION

Congress enacted the FDCPA, in part, "to eliminate abusive debt collection practices" and "protect consumers from deceptive or harassing actions taken by debt collectors." 15 U.S.C. § 1692; *Gabriele v. Am. Home Mortg. Servicing, Inc*., 503 F. App'x 89, 93 (2d Cir. 2012) (internal citations omitted); *see Vincent v. The Money Store*, 736 F.3d 88, 101 (2d Cir. 2013) (citing *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 27 (2d Cir.1989) ("Congress painted with a broad brush in the FDCPA to protect consumers from abusive and deceptive debt collection practices."). To achieve these ends, the FDCPA, imposes, "among other things, notice and timing requirements on efforts by 'debt collectors' to recover outstanding obligations." *Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti*, 374 F.3d 56, 58 (2d Cir. 2004). Pursuant to Section 1692k,

"any debt collector who fails to comply with any provision of [the FDCPA] with respect to any person is liable to such person."  15 U.S.C. § 1692k.

The parties primarily dispute whether Plaintiff has sufficiently pled that Defendant is a debt collector, whether the notice left on Plaintiff's door constitutes a "communication" within the meaning of the Act, and if so, whether Defendant is exempted under the FDCPA.

### I.    Safeguard is a Debt Collector Under the FDCPA

Safeguard contends that the factual allegations establish that it is not a "debt collector" as defined by the Act.  Though apparently uncommon if not somewhat of a novel issue in this District, both this particular set of facts and this Defendant have appeared in litigation outside of this Circuit, and the parties rely primarily on decisions rendered by courts from our sister circuits in support of their respective arguments.

Subject to exclusions not relevant here, the term debt collector is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  Thus the FDCPA "establishes two alternative predicates for 'debt collector' status—engaging in such activity as the 'principal purpose' of the entity's business and 'regularly' engaging in such activity."  *Goldstein*, 374 F.3d at 61 (citing 15 U.S.C. § 1692a(6)).  Despite a nearly page-long string cite of factually dissimilar cases cited by Defendants to refute the applicability of the first predicate, (*see* Def's Mem. of Law In Support of Mot. To Dismiss at 6, ECF No. 31, [hereinafter ("Def's. Mem.")]), Plaintiff does not allege that debt collection is a principal purpose of Safeguard's business. (*See, e.g.*, Pl's. Mem. In Opp. to Def's. Mot. to Dismiss at 11, ECF No. 32, [hereinafter ("Pl's. Opp.")]; Am. Compl. ¶ 8, 12b.)  Rather, Plaintiff contends

that Safeguard regularly engages in debt collect activity on behalf of mortgage companies, such that it can be considered a "debt-collector" under the second predicate of §1692a(6). (*Id.*)

Specifically, Plaintiff alleges that Safeguard "communicate[s] with delinquent borrowers on behalf of mortgage companies," and cites the following excerpt from Safeguard's website as support for this contention:

> Through contact inspections, inspectors will make up to three attempts on behalf of mortgage servicers and lenders to provide contact information to delinquent borrowers. Multiple attempts generally occur 24 hours apart and at different times of the day to increase the chances of a successful contact. Attempts to contact the mortgagor are made during a visual exterior inspection for occupancy status per investor/insurer guidelines and/or client instruction …The inspector will leave a door hanger that contains the client's contact information, in an effort to have the mortgagor contact the client.

(Am. Compl. ¶ 12b.)  Plaintiff also alleges that Safeguard regularly operates in conjunction with and on behalf of creditors and other entities, including Ditech, in an attempt to facilitate the collection of debt.  (*Id.* ¶ 8.)  With regard to Plaintiff specifically, the Amended Complaint contends that Ditech retained Safeguard's services to "assist it in the attempted collection [of] Plaintiff's mortgage debt by instructing Safeguard to deliver a written collection communication to Plaintiff," that Safeguard did so, and that the purpose of the communication was to "assist and facilitate Ditech's attempted collection" of Plaintiff's debt.  (*Id.* at ¶ 16, 19.)  In response, Safeguard attempts to liken itself to entities that perform only "ministerial" duties for debt collectors such as the stuffing and mailing of communications.  (*See* Def's. Mem. at 8) (citing district court cases indicating servicers that merely "stuff," print, and mail debt collector communications are not debt collectors under the FDCPA).

It is true, as the Second Circuit has held, that "'collecting' debts must mean something more than *any* role, no matter how tangential, in the collection process." *Vincent*, 736 F.3d at 101. Assembling and mailing communication on behalf of mortgage companies alone reasonably falls

outside of conduct that can be attributed to debt collection. *See id*. However, this conduct is distinct from Safeguard's alleged efforts to make multiple, direct, in-person contact with delinquent borrowers at their homes, and to facilitate communication between borrowers and collecting entities regarding debt owed. On these bases, accepting all factual allegations set forth in the Amended Complaint as true, and drawing all reasonable inferences in Plaintiff's favor, as is required at this stage, the Court finds the allegations pled with regard to services Safeguard markets to mortgage companies to facilitate the collection of debt are sufficient to qualify as "regular[ ]...attempts to collect,...indirectly, debts...asserted to be owed or due another" – qualifying Safeguard as a "debt collector" under § 1692a(6). Unlike the performance of ministerial duties alone, Safeguard visits debtors at their homes and properties, may interact with debtors, and in the process, could uncover information aiding Ditech's debt collection.

Though the Court need not rely on these decisions, it notes that the two other district courts faced with materially identical facts as to Safeguard's status have come to the same conclusion – that Safeguard's conduct brings it within the meaning of a "debt collector" under 1692a(6). In *Schlaf v. Safeguard Properties*,[1] LLC, 15-CV-50113, 2016 WL 612866, at *1 (N.D. Ill. Feb. 16, 2016), the plaintiff's home also served as collateral for a mortgage serviced by Green Tree. *Id*. Green Tree hired Safeguard, which subsequently performed a "contact inspection" of the plaintiff's residence and left a door hanger on the plaintiff's door, which appeared to bear a message identical to the one Plaintiff received in this action. *Id*. In coming to the conclusion that

---

[1] Many of the opinions Defendant cites in its papers where Safeguard was found not to be a debt collector were also cited in *Schlaf*. (*Compare* Def's. Mem. at 6, *with Schlaf*, 2016 WL 612866, at *3.) That Court correctly noted that these cases "uniformly arise in the context of Safeguard inspecting, or entering a home to winterize it [and/or remove personal property] without communication with the debtors," and that "none of them involve[d] attempts at in-person communication with debtors or communication to a debtor through the leaving of a door hanger or other note." As, such, neither these or the similar, supplemental cases Defendant cites on this point are decisive.

Safeguard is in fact a "debt-collector" under the FDCPA, the *Schlaf* Court noted that Safeguard advertised that it provides "in-person and written communications to a debtor 'on behalf of' the mortgage servicers, suggesting that Safeguard is exercising discretion in its activities and is not simply offering to carry a note from the mortgage servicer to the debtor like a messenger service." *Schlaf*, 2016 WL 612866, at *3. The Court also noted that the door hanger appeared to be drafted by Safeguard, rather than the mortgage servicer, because "Green Tree" and the phone number were on a "stuck-on label," suggesting that the door hanger is a product that Safeguard offers to all of its clients, changing the name and phone number according to the client being serviced. *Id*. at 2. Given "messenger services typically do not draft the correspondence they carry to recipients," the court found plaintiff had plausibly alleged, instead, that Safeguard "sold a service to make three attempts at a face-to-face encounter with a debtor, and to leave a written message, all with the alleged intent that the debtor should contact the mortgage servicer to assist in that servicer's collection efforts." *Id*. On this basis, the Court found it reasonably plausible that Safeguard had engaged in "attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another," pursuant to 15 U.S.C. § 1692a(6). *Id*.

The *Schlaf* Court also noted that the same door hanger appeared in *Simpson v. Safeguard Properties*, *L.L.C.*, 13-CV-2453, 2013 WL 2642143 (N.D. Ill. June 12, 2013), with regard to a different mortgage servicer. *Id*. at 3. In this action, which was also brought against Safeguard based on materially identical facts, the court also found that Safeguard was a debt collector. *See Simpson v. Safeguard Properties, L.L.C*., 13-CV-2453, 2013 WL 2642143, at *2 (N.D. Ill. June 12, 2013) ("Although Simpson does not allege that Safeguard collects or attempts to collect debts on behalf of mortgage companies, entities that contact consumers attempting to facilitate

7

communication with creditors have been found to be 'debt collectors.'").[2]  This Court agrees that

as alleged in the Amended Complaint, Safeguard's involvement in debt collection brings it within

the purview of the FDCPA.  *See Heintz, v. Jenkins*, 514 U.S. 291, 297 (1995) (finding attorneys

litigating cases on behalf of their clients could qualify as debt-collection and noting "litigating ...

seems simply one way of collecting a debt"); *Romine v. Diversified Collection Servs., Inc*., 155

F.3d 1142, 1143 (9th Cir. 1998); (Western Union, third-party not benefiting directly from debt-

collection practice, could qualify as indirect debt-collector with relation to its Automated Voice

Telegram service); *Fielding v. FCC Fin., LLC*, 12-CV-00194, 2015 WL 12532741, at *4–5 (M.D.

Tenn. Jan. 22, 2015) (entity that advertised its services as a debt collection tool, visually assessed

debtor properties, and sent letters to debtors can be indirect debt collector although it does not

receive funds or request debtors pay it directly); *McNall v. Credit Bureau of Josephine Cty*., 689

F. Supp. 2d 1265, 1277–78 (D. Or. 2010) (process servicer can qualify as debt-collector);

*Richardson v. Baker*, 663 F. Supp. 651, 655-57 (S.D.N.Y. 1987) (government contractor who sent

notices to debtors "at the behest of" the Department of Education could qualify as debt collector

under the FDCPA).

---

[2] Defendant's argument that the Court should look, not to *Schlaf* and *Simpson*, but to other cases with dissimilar facts is not persuasive. (*See, e.g.*, Def's. Mem. at 8, 10-11) (citing, for example, *Laubach v. Arrow Serv. Bureau, Inc.,* 987 F.Supp. 625, 630-31 (N.D. Ill. 1997) (finding company that merely printed and mailed debt collection letters drafted by another was not a debt collector and noting the company "does not provide follow-up collection services"); *Trull v. Lason Sys., Inc*., 982 F. Supp. 600 (N.D. Ill. 1997) (finding company that advertises distribution of letters to attract business from all sectors, and provided many of same services to non-collection agency customers not debt-collector, and noting company merely printed and mailed communication drafted by collection agency and made no further contact with debtors)).  In contrast to the conduct of many of the entities in the cases cited by Defendant, the Court notes that in the current action, Plaintiff alleges that Defendant advertises that it would make multiple visits to delinquent debtors' homes "at different times of the day to increase the chances of a successful contact."  (*See* Am. Compl. at ¶ 12b.)  The Court also notes that Defendant re-cites the same slew of cases discussed *supra* note 1, at 6, to argue that *Simpson* is an "outlier" against a backdrop of cases finding that Safeguard is not a debt collector.  (*See* Def's. Mem. at 11.)   As previously stated, these cases pertain to the inspection, winterization and/or removal of property, not the facts at issue here, and are thus largely irrelevant. (*See id*.; Def's. Reply Mem. at 6-7; *see also* Def. Mem. at 13 (citing transcript from *Deegan v. Safeguard Properties, Inc*., 13-CV-4840, (N.D. Ill. September 13, 2013) (noting Safeguard is engaged in a "different kind of enforcement" involving "invasion of property and shutting things down," and that though this may encourage debt payment, this activity cannot constitute debt collection).)

## II.      Defendant's "Least Sophisticated Consumer" Argument

Defendant argues that even if Safeguard were a debt collector, it did not violate the FDCPA because even the "least sophisticated" consumer would not have believed that Safeguard was engaged in collection, given "there is no evidence Safeguard was collecting debt."  (*See* Def's. Mem. at 14-15; Def's. Reply at 8.)  Essentially, Defendant argues that the reasonable consumer would not have known of Safeguard's involvement, and in fact, that Plaintiff does not allege he believed Safeguard was collecting debt, because Safeguard's door hanger appeared to be from Green Tree.  (*Id*.)  To this end, Defendant instructs the Court that it must determine "whether the least sophisticated consumer would believe that the door hanger came not from Green Tree but from an unrelated third party, Safeguard Properties ... [and] [i]f the least sophisticated consumer would believe that the door hanger came from Safeguard, then, and only then could the FDCPA apply." (Def's. Mem. at 15.)

As an initial matter, the Court notes that the "least sophisticated consumer" standard is generally applied in instances where a creditor or collecting entity "uses a name other than [its] own" "pretends to be someone else" or uses "a pseudonym or alias," such that the debt collector's identity is hidden, and the "least sophisticated consumer" is given a false impression as to their identity. *Mazzei v. Money Store*, 349 F. Supp. 2d 651, 659–60 (S.D.N.Y. 2004) (citing *Maguire v. Citicorp Retail Servs., Inc.*, 147 F.3d 232, 235 (2d Cir. 1998)).  This is true for many of the cases cited by Defendant in support of its argument.  (*See* Def's. Mem. at 14-15) (citing *Maguire*, 147 F.3d at 235-236 (applying the "least sophisticated consumer" standard to find considerable evidentiary support that creditor used "name other than its own" to collected debt); *Clomon v. Jackson*, 988 F.2d 1314, 1320-21 (2d Cir. 1993) (applying standard to determine that

communication could give least sophisticated consumer impression letter from debt collection agency was actually from general counsel); *Lorenz v. GE Capital Retail Bank*, 944 F. Supp. 2d 220, 225 (E.D.N.Y. 2013) (noting standard is applicable where creditor attempts to collect debt using name other than its own)).

The "least sophisticated user" standard is consistent with the overall purpose of the FDCPA, which is to limit harassing, misleading, and deceptive contacts and communications with or about consumer debtors.  Consistent with this principal, the Second Circuit has "emphasized that the use of *any* false, deceptive, or misleading representation in a collection letter violates § 1692e - regardless of whether the representation in question violates a particular subsection of that provision." *Clomon*, 988 F.2d at 1320 (citing 15 U.S.C. § 1692e).  That said, the standard is designed to serve as another prophylactic measure, rather than a shield to be employed by entities engaged in debt collection.  *See Lorenz v. GE Capital Retail Bank*, 944 F. Supp. 2d 220, 225 (E.D.N.Y. 2013) ("Those collecting debts due to another were thought to be not similarly restrained and therefore more likely to engage in the type of unscrupulous activities the Act seeks to prevent.") (internal citations omitted).

This Court has found that Plaintiff plausibly alleges Safeguard is a debt-collector within the meaning of the FDCPA.  A debt collector violates the FDCPA, when, among other things, it fails to identify itself as such in initial and subsequent "communications," be they oral or written, with a debtor. 15 U.S.C. § 1692e(11).  The FDCPA defines a "communication" as "the conveying of information regarding a debt *directly or indirectly* to any person through any medium."  15 U.S.C. § 1692a(2).  In this case, as alleged in the Amended Complaint, Safeguard left a door hanger on Plaintiff's door instructing him to call "Green Tree Mortgage" and to be prepared to provide his account number, and that the call would be expected "today."  (*See* Am. Compl. ¶ 17.)  Thus,

as alleged, Safeguard left the door hanger on Plaintiff's door in order to facilitate the collection of

Plaintiff's outstanding debt, and engaged in an "indirect attempt to collect debt owed another."

The Court finds the door hanger to be a "communication" under the FDCPA – at the very least, it

is an indirect communication concerning Plaintiff's debt; namely, that a mortgage servicer, Green

Tree, is expecting an immediate call from Plaintiff regarding his account.  *See Fielding v. FCC*

*Fin.*, *LLC*, 12-CV-00194, 2015 WL 12532741, at \*4–5 (M.D. Tenn. Jan. 22, 2015) (debt-collector

*need not receive funds or ask debtor to pay them directly* for their actions to "constitute a

roundabout attempt to obtain payment from [debtor] on behalf of [another]") (emphasis added);

*see also Siwulec v. J.M. Adjustment Servs., L.L.C.*, 465 F. App'x 200, 204 (3d Cir. 2012) (holding

that field service in which agent contacts and encourages debtor to call the creditor qualifies as

communication under FDCPA); *Horkey v. J.V.D.B. & Assocs., Inc.*, 333 F.3d 769, 774 (7th Cir.

2003) (message constitutes a "communication" under the FDCPA where the "only reason" the

phone call had been made was to collect a debt); *Pawelczak v. Nations Recovery Ctr., Inc.*, 11-

CV-3700, 2012 WL 2192263, at \*5 (N.D. Ill. June 14, 2012) (finding voicemails qualified as

communications under FDCPA where messages left callback number, requested debtor call back

to discuss the "matter" and stated that it was "important" debtor call back "soon" or "today");

*Hutton v. C.B. Accounts, Inc.*, 10-CV-3052, 2010 WL 3021904, at \*3 (C.D. Ill. Aug. 3, 2010)

(finding, because "the only reason defendant called plaintiff was to attempt to collect on her

outstanding debt … that Plaintiff ha[d] adequately alleged that voicemail messages at issue were

"'communications'" under the FDCPA); *Edwards v. Niagara Credit Solutions, Inc.*, 586 F. Supp.

2d 1346, 1350 (N.D. Ga. 2008) (indicating majority of courts have held that a *phone messages*

*referencing an "important matter"* or similar language can be sufficient to constitute a

11

"communication" under the FDCPA) (emphasis added), *aff'd on other grounds,* 584 F.3d 1350 (11th Cir.2009).

Where a debt-collector engages in a communication with a debtor covered by the FDCPA, as Safeguard has done here, it is obligated to comply with the requirements provided for by the Act.  Thus, as Plaintiff argues – Defendant's contention that the "least sophisticated" user would not have known that it was Safeguard that had appeared at Plaintiff's home, with the intention of engaging in the indirect collection of debt owed, without revealing its identity and the details regarding its visit – is effectively an admission that Safeguard failed to provide the disclosures required under § 1692(e)[3] as alleged in the Amended Complaint.  For these reasons, "in evaluating [these] potential violations of the FDCPA," the court finds that Plaintiff has plausibly alleged that the "least sophisticated consumer" would be deceived by Safeguard's collection practice. *Maguire*, 147 F.3d at 236.

At this stage, as previously noted, the Court must accept all plausibly alleged factual allegations as true, and draw all reasonable inferences in Plaintiff's favor.  In light of this standard, and the purpose of the statue – to prevent misleading representations in connection with debt collection – the Court finds that Plaintiff has plausibly alleged that the door hanger left by

---

[3] 15 U.S.C § 1692e(11) and (14) provide that;

"A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(11) The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

(14) The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization."

Defendant is a communication within the meaning of the FDCPA, and thus, that Plaintiff has adequately alleged Defendant failed to provide sufficient disclosure as required under the Act.

### III.     Defendant's Fiduciary Obligation Exemption Argument

Section 1692a(6)(F) identifies various exceptions to the definition of a debt collector. Among others, this exception excludes the following individuals from the meaning of the term: "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement." 15 U.S.C. § 1692a(6)(F).  Defendant argues that it is not a debt collector because the door hangers are incidental to its bona fide fiduciary obligation to Green Tree/Ditech. (*See, e.g*., Def's. Mem. at 17-19.)  At this stage, the Court cannot determine whether Safeguard had a fiduciary obligation to Green Tree.  In fact, of the three opinions Defendant cites as direct support for this proposition, two arise from a summary judgment motion, and in the other, an appeal of a motion to dismiss, the Ninth Circuit assessed whether there was a fiduciary obligation between the Department of Education ("DOE") and a guaranty agency by looking to regulations promulgated by the DOE, and prior decisions on the same question.  (*See, e.g.*, Def's. Mem. at 17-18) (citing *Harris v. Liberty Cmty. Mgmt., Inc.*, 702 F.3d 1298, 1303 (11th Cir. 2012) (relying on evidence in the record to assess whether defendant had fiduciary relationship with associated entity such that it was exempted from debt collector status, on summary judgment appeal).  Discovery may reveal that Safeguard's conduct was in fact incidental to a fiduciary obligation to Ditech, but such a conclusion would be premature.  As such, this defense does not undermine the plausibility of Plaintiff's allegations at this stage, and the Court rejects this Argument for the time being.

13

## CONCLUSION

For the reasons stated above, Defendant's motion to dismiss the Amended Complaint is

DENIED. The parties are directed to appear for a status conference on March 22, 2017 at 11:00

a.m., at the United States Courthouse, 300 Quarropas Street, Courtroom 218, White Plains, New

York 10601. The Clerk of Court is respectfully requested to terminate the motion at ECF No.

30.


Dated:   March 3, 2016                        SO ORDERED:
         White Plains, New York

                                              _____
                                              NELSON S. ROMÁN
                                              United States District Judge

14