USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/21/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AARON COHEN,

          Plaintiff,

-against-

DITECH FINANCIAL, LLC f/k/a,
GREEN TREE SERVICING, LLC, and
SAFEGUARD PROPERTIES LLC

          Defendant.

15 Civ. 07124 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Plaintiff Aaron Cohen initiated this three-count complaint against Defendant Ditech Financial LLC, formerly known as Green Tree Servicing, LLC ("Green Tree" or "Ditech")[1], and Defendant Safeguard Properties LLC ("Safeguard" or "Defendant"), alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq.* ("FDCPA"). Plaintiff alleges that Defendant violated §1692c under Count 1, §1692e under Count 2 and §1692g under Count 3. Presently before the Court is Defendant Safeguard's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 (the "Defendant's Motion"). For the following reasons the Defendant's Motion is granted.

## BACKGROUND

All facts are taken from the Amended Complaint (the "Am. Compl."), ECF. No 17, Defendant's Rule 56.1 Statement of Undisputed Material Facts ("Def. 56.1"), ECF No. 83, Plaintiff's Response to Safeguard's Statement of Material Facts ("Plf. Resp.") and Plaintiff's

---

[1] By so-ordered Stipulation of Partial Dismissal dated February 6, 2018, Ditech Financial LLC was terminated as Defendant in this action. (*See* ECF No. 79.)

1

Statement of Additional Material Facts ("Plf. Add. Resp."), both at ECF No. 88, and Safeguard's Response to Plaintiff's Statement of Additional Material Facts ("Def. Resp."), ECF No. 86, are uncontested except where indicated.

Safeguard is a mortgage field services company that inspects, preserves and protects properties on behalf of their client, which are servicers, mortgage companies, investors, credit unions and land banks. (Plf. Resp., ¶10.) Plaintiff has a residential mortgage loan on his home serviced by Ditech. (*Id.*, ¶¶20-24.)

In March 2015, doing business as Green Tree Servicing LLC, Ditech commenced a foreclosure filing, claiming that Plaintiff's loan had been in default since 2010. (*Id.*) Ditech retained Safeguard to conduct a "contact inspection" of Plaintiff's home (*Id.*, ¶ 15.) According to Green Tree, the purpose of the contact inspection is to verify who is occupying the property and to verify the condition and status of the collateral (*Id.*, ¶ 27). Safeguard performed some 3,000 inspections in the year and 20 days after Plaintiff filed this action. ( Def. Resp., ¶8.)

Shortly before August 12, 2015, Safeguard left a door hanger on Plaintiff's door (Plf. Resp., ¶ 2) which advised Plaintiff to call Green Tree Mortgage at a specific number, to be prepared to give his account number, and said: "WE ARE EXPECTING YOUR CALL TODAY." (*Id.*, ¶7.) The door hanger was left as part of the contact inspection on Plaintiff's home. (*Id.*, ¶26.) The door hanger had no indication that it was a communication from Safeguard. (*Id.* ¶69.) Plaintiff admitted that "he could not recall if he ever called the number on the door hanger." (*Id.* at ¶71.) Plaintiff stated that he could not recall "ever having a conversation with anyone at Safeguard." (*Id.* at ¶72.) Based on this record, Plaintiff did not have any other form of communication with Safeguard.

2

Safeguard conducted the work at Plaintiff's property on behalf of Ditech pursuant to a Master Property Services Agreement. (*Id.*, ¶¶ 11, 12.) Safeguard is required to perform all services in compliance with applicable FHA, VA, HUD, Fannie Mae, Freddie Mac, GNMA, private investor and private mortgage insurer regulations, guidelines and requirements as stipulated in its agreement with Ditech. (Def. Resp., ¶10.) When Safeguard receives an order from a client, Safeguard receives the loan number, the mortgagor information, the type of loan and the type of inspection that Safeguard is to complete. (Plf. Resp., ¶16.) The order file for Plaintiff's property from Green Tree did not include the unpaid principal balance or the amount of the mortgage. (*Id.*, ¶ 47.) Safeguard does not collect debt nor does it collect any money for Ditech. (Def. 56.1, ¶48, ¶49.) Safeguard does not have infrastructure in place to collect a debt. (*Id.*, ¶51.) Safeguard does not hold or collect any funds for Green Tree. (*Id.*, ¶¶46, 48.) Safeguard does not hold title to property for Green Tree at any point. (*Id.*, ¶55.) Safeguard is not authorized by Green Tree to discuss the debt with the borrower (*Id.*, ¶64.) Plaintiff admits Safeguard does not hold or collect any funds for Green Tree (*Id.*, ¶ 54.)

Plaintiff states that Defendant is aware that a contact attempt inspection is being made to contact delinquent borrowers as part of the servicer's debt collection efforts. (*Id.*, ¶56.) Plaintiff points to evidence that Defendant advertises its services for contacting "delinquent borrowers." (*Id.*) As further evidence of this disputed fact, Plaintiff submits that the door hanger left during the contact inspection makes no mention of occupancy and does nothing to direct the recipient to provide information about the status of the property. (*Id.* ¶27.) Plaintiff further submits the phone number on the doorhanger does nothing to assist Ditech in learning about the status of the collateral. (*Id.*) Rather, Plaintiff states that calls to the number on the doorhanger are routed to Ditech's general customer service line, where Ditech attempts to collect the outstanding

3

mortgage debt. (Plf. Add. Resp., ¶ 2.) Plaintiff points to evidence that Safeguard inspectors are directed to personally tell debtors to call their mortgage company. (*Id.*, ¶ 3.) Plaintiff also points to language on Safeguard's website, describing the contact inspection (*Id.* ¶1).[2] Defendant replies that the contact inspection is only one of many services provided. (*Def. Resp.,*¶2.) Defendant denies that the phone number on the door hanger directs the recipient to a specific line from which Ditech specifically attempted to collect an outstanding mortgage debt. (*Id.*, ¶2). Furthermore, Safeguard's compensation is not contingent on whether the debt is ultimately paid or how much, if any of the debt is paid. (Plf. Resp., ¶ 61.) Safeguard is paid a single, flat fee for a contact attempt inspection. (Plf.,¶ 63.)

## STANDARD OF REVIEW

Summary judgement is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of pointing to evidence in the record to "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party fulfills its preliminary burden, the onus shifts to the non-moving party to raise the existence of a genuine issue of material fact. Fed. R. Civ. P56(c)(1)(A); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Courts must construe "all the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences." *Anderson News L.L.C. v. American Media, Inc.*, 899 F.3d. 87 (2d. Cir. 2018).

---

[2] Defendant's website said in part: "Through contact inspections, inspectors will make up to three attempts on behalf of mortgage servicers and lenders to provide contact information to delinquent borrowers ... the inspector will leave a door hanger that contains the client's contact information, in an effort to have the mortgagor contact the client." (*See* ECF No. 41, ¶ 12.) However, despite Plaintiff's submission, the Court does not agree that this language sufficiently supports the argument that Defendant is a "debt collector."

A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for a non-moving party." *Anderson*, 477 U.S. at 248; accord *Gen. Star. Natl. Ins. Co. v. Universal Fabricators, Inc.*, 585 F.3d 31, 35 (2d Cir. 2008); Benn v. Kissane, 510 Fed.Appx. 34, 36 (2d. Cir. 2013) (summary order). Summary judgment should be granted when a party "fails to make a showing sufficient to establish the existence of an element essential to the party's case." *Celotex*, 477 U.S. at 322. Critically, in an opposition to a motion for summary judgment "[s]tatements that are devoid of any specific, but replete with conclusions" will not suffice. *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d. Cir. 1999); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts").

## DISCUSSION

### I.     Plaintiff Has Standing to Bring This Lawsuit.

Defendant contends that Plaintiff has not alleged any particularized concrete injury that he has sustained as a result of Safeguard leaving the door hanger on his doorknob during the contact Inspection. (Defendant's Memorandum of Law ("Def. Mem."), Ex. 84, at 24.) Therefore, Defendant argues Plaintiff lacks standing to sue under *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 L.Ed.2d.635, 643 (2016).

A violation of the FDCPA protections is a concrete injury in fact. *Papetti v. Does 1-25*, 691 Fed.Appx. 24 (2nd Cir. 2017). Relying on *Spokeo*, 136 S. Ct. 1540 (2016), the *Papetti* defendant argued, similarly to the defendant in the present case, that plaintiff did not suffer an injury in fact because he alleged only "procedural violations" of the FDCPA." The Second Circuit noted that "*Spokeo* does not 'categorically ... preclude[ ] violations of statutorily

5

mandated procedures from qualifying as concrete injuries.'" *Papetti*, 691 Fed.Appx. at 26 (quoting *Strubel v. Comenity Bank*, 842 F.3d 181, 189) (2d Cir. 2016). The Court explained that "'some violations of statutorily mandated procedures may entail the concrete injury necessary for standing.'" *Id.* The Court further said that there is "no dispute" that Section 1692e of the FDCPA protects "concrete interests" or protection from abusive debt collection. *Id.* Although *Papetti* is a summary order and not controlling, numerous district courts have followed that decision. *Dzganiya v. Cohen Ehrenfeld Pomerantz & Tenenbaum, LLP*, No. 1:17-cv-04525, 2018 WL 2247206 at *9 (S.D.N.Y. May 16, 2018); *Ceban v. Capital Mgmt. Servs.*, L.P., No. 17CV4554ARRCLP, 2018 WL 451637, at *4 (E.D.N.Y. Jan. 17, 2018); *Roth v. Solomon & Solomon, P.C.*, No. 17-CV-0868(JS)(AKT), 2018 WL 718402, at *3 (E.D.N.Y. Feb. 5, 2018); *Degrasse v. Financial Recovery Services, Inc.*, No. 16-CV-3727 (KAM) 2018 WL 221461 at *3 (E.D.N.Y. March 5, 2018).

For these reasons, plaintiff has standing to assert claims under the FDCPA.

## II. Violation of the FDCPA.

Plaintiff has three main positions. First, Plaintiff argues that in placing the doorhanger on behalf of Ditech on plaintiff's door, Safeguard was attempting to collect a debt within the meaning of 15 U.S.C. §1692a(5). (Plaintiff's Response to Safeguard's Motion for Summary Judgement ("Plf. Mem. Resp. to MSJ"), ECF No. 85, at 2-3.) Second, Plaintiff argues that placing the doorhanger on behalf of Ditech is tantamount to indirect debt collection within the meaning of the FDCPA. (*Id.* at 4-7.) Third, Plaintiff argues that Safeguard violated the FDCPA because it did not provide the disclosures required of debt collectors pursuant to 15 U.S.C. § 1692g, §1692e(11) and § 1692e(14). (Am. Comp. ¶¶23, 38.) All of these claims depend on Safeguard being a debt collector under the FDCPA.

Congress enacted the Fair Debt Collection Practices Act ("FDCPA") to curb "abusive, deceptive, and unfair debt collection practices by debt collectors." 15 U.S.C. §1692 **(Westlaw through P.L. 115-223)**. The FDCPA prohibits debt collectors from engaging in "any false, deceptive or misleading representation or means in connection with the collection of any debt." 15 U.S.C. §1692(e). "Specifically, the FDCPA 'prohibits unfair or unconscionable collection methods, conduct which harasses, oppresses or abuses any debtor, and the making of any false, misleading, or deceptive statements in connection with a debt, and it requires that collectors make certain disclosures.'" *Foti v. NCO Financial Systems, Inc.* 424 F. Supp. 643, 653 (S.D.N.Y. 2006) (citing *Acosta v. Campbell*, No. 6:04 Civ. 761, 2006 WL 146208 at *12 (M.D. Fla. Jan. 18, 2006).

To prove a violation under the Act, a plaintiff "(1) must be a 'consumer' who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt, and (2) the defendant collecting the debt is considered a 'debt collector,' and (3) the defendant has engaged in any act or omission in violation of FDCPA requirements." *Polanco v. NCO Portfolio Management Inc.*, 32 F.Supp.3d 567 (S.D.N.Y. 2015) *(*quoting *Plummer v. Atl. Credit & Fin., Inc.*, 66 F.Supp.3d 484, 488 (S.D.N.Y.2014) (internal citation omitted).

The first requirement, that the consumer owes a debt, is not in dispute here. Plaintiff admits that he is past due on mortgage payments.

The second requirement concerns the question, is the defendant a "debt collector" under the FDCPA? When construing a statute, the Second Circuit has instructed us to begin with the "plain language, giving all undefined terms their ordinary meaning." *Vangorden v. Second Round Limited Partnership*, 897 F.3d 433,437 (2d Cir. 2018)(citing *Federal Hous. Fin. Agency v. UBS Ams. Inc.*, 712 F.3d 136, 141 (2d Cir. 2013)). Courts should construe FDCPA text

liberally to effectuate the overriding statutory purpose." (*Id.* at 437.) Here, it is clear that 15 U.S.C. §1692 aims to curb unfair and abusive debt collection practices by debt collectors. The statute, however, places a limitation on the scope of law's application: is applies only to debt collectors. *Maguire v. Citicorp Retail Services, Inc., 147 F.3d 232, 235 (2d. Cir. 1998)* ; *Carlson v. Long Island Jewish Medical Center*, 378 F. Supp. 2d 128, 131 (E.D.N.Y. 2005); *Harrison v. NBD Inc.*, 968 F.Supp. 837, 841 (E.D.N.Y.1997)).

A debt collector is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." §1692 (a)(6). The "FDCPA establishes two alternative predicates for "debt collector" status—engaging in such activity as the 'principal purpose' of the entity's business and 'regularly' engaging in such activity." *Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti*, 374 F.3d 56 (2d. Cir 2004). Thus, a company can fall under the scope of the definition if (1) its principle purpose is debt collection or (2) it regularly attempts to collect debts directly or indirectly.

Here, Safeguard's activity does not meet the first prong of the "debt collector" definition because its principle purpose is not debt collection. Plaintiff admits that Safeguard is a "mortgage field services company that inspects, preserves and protects properties on behalf of their client, which are servicers, mortgage companies, investors, credit unions and land banks." (Plf. Response, ¶10.) Plaintiff also concedes that Safeguard does business with Green Tree to provide services such as "inspections, securing, winterization, grass cuts, snow plows, boarding of windows, clearing boarded windows and registering properties." (Plf. Resp., ¶43).

Regarding the second prong of the definition—whether a company regularly collects or attempts to collect debts *directly or indirectly* – collecting debts does not mean any action no matter how slight. *Vincent v. The Money Store*, 736 F.3d 88, 101 (2d. Cir. 2013). Rather, the term "debt collector," "must mean something more than *any* role, no matter how tangential, in the collection process." (*Id.*) Thus, an outside law firm was not a debt collector simply because it was "generating and mailing the breach letters." (*Id.* at 101.) Acting as a mere "conduit" for a collection process is not enough. *Id.* at 104. *Accord White v. Goodman*, 200 F 3d. 1016 (7th Cir. 2000) (FDCPA is not aimed at "companies that perform ministerial duties for debt collectors, such as stuffing and printing debt collector's letters"); *see also White v. Simonson & Cohen P.C.*, 23 F. Supp. 2d 273 (E.D.N.Y. 1998)( law firm that sent 35 debt collection letters on behalf of a client, litigating none of them, was not a "debt collector" within the meaning of the FDCPA).

In some circumstances, of course, persons who assist in debt collection can be liable as "debt collectors." *See Polanco,* 32 F.Supp.3d, 567, 580)("hiring a third party debt collection agency or law firm to assist in everyday debt collection activities falls squarely within this definition, particularly where, as here, the third party entities worked pursuant to governing procedures provided by the debt collector.") *See also Cacace v. Lucas*, 775 F. Supp. 502 (D. Conn. 1990) ( holding attorney was in the debt collection business within the meaning of the FDCPA even though debt collection did not form a principal part of his practice, where the volume of his collection activities was substantial); *Tragianese v. Blackmon*, 993 F. Supp. 96 (D. Conn. 1997 )(private detective who sent 60 collection letters for one client over a period of a few weeks was a "debt collector" under the FDCPA). An " entity that attempts to collect debts in default and does not 'service' the debt, even though it nominally owns the debt and is collecting it for itself" falls within definition of "debt collector ; *Sykes v. Mel Harris and*

*Associates, LLC*, 757 F.Supp.2d 413 (S.D.N.Y. 2010)(entity in the business of buying defaulted debts meets the definition of "debt collector").

Thus, the question of what constitutes "debt collection" hinges on the nature of the contacts with a debtor, including the objective purpose and intent of an entity's actions as well as the specific communications at issue. In this case, there is no genuine dispute that Safeguard is not a debt collector. Safeguard placed a door hanger on the plaintiff's front door. There was no direct contact of any kind between Safeguard and the plaintiff. Safeguard did not know how much was owed in unpaid principal balance or the amount of the mortgage from Green Tree pertaining to Plaintiff's property. Safeguard did not discuss the debt with the borrower. Safeguard did not collect any money or attempt to collect any money from the plaintiff. Safeguard's compensation was not contingent on whether the debt is ultimately paid. Leaving a doorhanger on Plaintiff's doorknob was in and of itself not invasive enough that Defendant should be regarded a debt collector.

Safeguard's activities simply do not rise to the level of "debt collecting" under the FDCPA, which requires a greater degree of contact with debtors, a more forceful and clear purpose to recoup the money owed on behalf of the creditor as well as more intimate knowledge of the debtors' financial situation. Plaintiff argues that Safeguard's advertising of its contact inspection service suggests it knows it is conducting an inspection on delinquent borrowers on behalf of creditors, and betrays the real purpose of the inspection. But, assuming the source of the website advertisement is Safeguard (Defendant points out that the source of the advertisement is not verified), the advertisement expresses only very generalized information. The advertisement may suggest Defendant knows Green Tree clients are in default, but does not

suggest much beyond that or that Safeguard has any baseline knowledge or role in collection of the debt, as our case law requires.

Plaintiff also raises the issue of whether placing the doorhanger is indirect debt collection. The Court of Appeals has stated that whether a 'communication is in connection with the collection of a debt' is a question of fact to be determined by reference to an objective standard." *Hart FCI Lender Services, Inc.* 797 F.3d 219, 225 ( 2d Cir.2015) (citing language in 16 U.S.C.A. §1692g ; *see also Ruth v. Triumph Partnerships,* 577 F.3d 790, 798 (7th Cir. 2009). The communication "need not itself be a collection attempt; it need only be 'connected to one.'"*Grden v. Leikin Ingber &Winters PC,* 643 F.3d 169 (quoting the extent of §1692e). It is not necessary for the communication to have an "explicit demand for payment" to trigger the protections of the FDCPA. *Gburek v. Litton Loan Servicing LP,* 614 F.3d 380, 385 (7th Cir. 2010).

Safeguard's conduct here does not rise to the level of "indirect" debt collection. *Schlaf v. Safeguard Property, 899 F.3d 459,* (7th Cir. 2018), a case with remarkably similar facts as here, concluded that simply placing a doorhanger on a debtor's knob did not rise to the level of indirect debt collection. (*Id.* at 466.) The *Schlaf* court acknowledged that in "a very broad, theoretical sense, it is possible to characterize facilitating the reestablishment of communication between homeowner and Green Tree as a preliminary step in Green Tree's own debt-collection process." (*Id.*) Nonetheless, it "is difficult to say, however, that such limited and very limited action even indirectly implicates the specific statutory concerns set forth in the language." (*Id.*) Of particular important, the leaving of a doorhanger did not include a demand for payment, and made no specific reference to the debt other than to give Green Tree's name and phone number. (*Id. at 467.*) Here, too, the only contact between Plaintiff and Safeguard was that Safeguard left

11

a doorhanger on plaintiff's doorknob. That single act is not as a matter of law enough needed to hold Safeguard liable for a violation of the FDCPA.

The Court concludes that there is no genuine dispute as to the fact that Safeguard is not a debt collector. Because status as a debt collector is required for liability under the FDCPA, all of plaintiff's claims fail as a matter of law. Therefore, the Court grants Safeguard's motion for summary judgment on all counts of the complaint.

## CONCLUSION

For the foregoing reasons, Defendant's Motion is GRANTED and Plaintiff's complaint is dismissed with prejudice. The Clerk of the Court is respectfully requested to enter judgment in Defendant Safeguard Properties LLC favor. The Clerk of the Court is further respectfully requested to terminate the motion at ECF No. 82 and terminate the action.

Dated: September 21, 2018
White Plains, New York

SO ORDERED:

NELSON S. ROMÁN
United States District Judge